MEMORANDUM OF THE WRIT OF HABEAUS CORPUS

THE FACTS IN THIS CASE ARE AS FOLLOWS:

08 - 494

1. The state failed to prove its case, in that the petitioner was infact in possession of the evidence , or that he was infact under the influence of alcohol or drugs, and that he was the driver of the car, that was in a accident.

2.The state failed to supply the Medical examiners report in the discovery , by the set time by the courts; then when they did , the reports were not signed , dated, or certified as stated by Rule 16,infact the prosecution went on a web site and pulled it off the web site , after it was down loaded.

3. The courts denied the petittioner the right to have witnessess testify on his behalf.

4. The chain of custody was broken when evidence was left out in the open , so anyone could have touched , contaminated, or messed with evidence, which infact changed weight.

5. The rights of petitioner was not given Due Process, and equal Protection which he is gauanteed by the United States Constitutuion

6. All evidence obtained from petitioners car was illegally obtained , with out the consent of ownere , or a valid search warrent.



AUG - 7 2008

U.S. DISTRICT COURT

7. The petiotioner was not given the right to a fair trial when the court aloud hearsay, and contaminated evidence in at trial.

8. The petitioner was given inadequate counsel at preliminary hearing , at trial, and on appeal. When counsel failed to raise issues at trial agianst letting the medical examiners report in at trial when the state was to be sanctioned for failure to supply the defense in the time frame of discovery, and counsel for appeal refused to raise issues on appeal, and counsel at preliminary hearing for he told petitioner the wrong information when state witnesses did not show up for hearing. the Supreme Court barred the petitioner from raising issues on post conviction relief because they were not raised on direct appeal.

9. When the Supreme Court denied appeal saying petitioner was barred from raising issues because they were not raised on direct apppeal violated his rights of Due Process which is gauarented by the United States Constitution.

On September 20,2005 the petitioner Shaw was involved
in a one car accident , upon arrival of the Newport Police Shaw
was climbing out of the drivers side door for the passenger side
door was jammed, Sgt Ryan noticed two males at the accident that
was there before he arrived, Sgt Ryan was the first officer at the
scene. Sgt Ryan did not take any statements of male witnesses
instead he took a females name and number that pulled up to the
scene when he did.

Sgt Ryan called for an ambulance, Shaw also had bloodon
his clothes and coming from his head, Shaw also had marks on his
legs and was complaing of intended injuries. The polise searched
the car,and released the car to Shaw , ( the owner) at 1:35am on
9/20/08. At 1:45am Shaw was taken to the hospital, around 2:00am
Sgt Ryan showed up at the hospital , for about 30 minutes then left
Around 3:30am Sgt Ryan showed back up at hospital to arrest Shaw
for driving under the influence. Shaw was then taken to Newport
police station, at that time Shaw was under arrest for driving
under the influence only. At around 5:15am Cpl Sandusky came into
question SHaw, Shaw was then read his Miranda Rights at that time..

During the interview, Cpl Sandusky pulled out a bag with
white powder in it and asked Shaw if he knew anything aboutit Shaw
if he didnt, but the girl driving the car might. THey said they
didnt know any girl was driving.

Cpl Sandusky took Shaw to J.P. court 11 , there Shaw was
charged with trafficking cocaine, posession with intent to deli-
ver, posession of drug paraphenalia, reckless driving, driving
under the influence , driving while suspended, maintaining a
vehicle,.

On September 30,2005 SHaw went for his preliminary
hearing, at that time state witnesses did not show up, and Shaw
asked counil to aks for dismissal, counsel said he had to wait
On October 4,2005 Shaw went bakk for his preliminary hearing, and
was bound over to Superior court, Shaw asked attorney what was go
ing on he thought counsel was going to ask for a dismissal, and
counsel said he should have asked on the first hearing.

On Decembre 2,2005 Shaw went for hearing of case review.
On January 4,2006 defense sent letter to proecution about discov-
ery. On Febuary 27, 2006 final case review was given to SHaw,trial
was set for June 28, 2006

On June 28,2006 Shaw was found guilty of trafficking
cocaine, poseession with intent to deliver, posession of para-
bhnalia, reckless driving, driving under the influence which attor=
ney objected to going to jury, maintaining a vehicle, driving while
suspended was dismissed.

On September 15,2006 Shaw was sentened to 5 years, 4 moths
different levels of probation and fines.

On September 27,2006 Shaw wrote letter to Supreme court
about notice of appeal, court sent letter to public defenders off-
ice stating all correspondences must come from the public defen=
ders office. On On November 3,2006 the attorney for the public
defenders office filed Notice of appeal NO# 538,2006 only citing
err by the court, even after Shaw told attorney to cite other merits.

On March 23,2007 the Supreme court affirmed the Superior
court decision.  On June 25,2007 post conviction relief was affir-
med to Judge Mary m. Johnston... At that time she determindd that
there were no procedural bars applied, but found there were no
merits to the issues raised.

On October 1,2007 Shaw filed a timely notice of appeal
and opening brief was due November 15,2007, ON October 28,2007
appeallant filed opening brief, On November 29,2007 appellees
answer brief brief was filed, stating only that Shaw was found ba
rred from raising any issues in the Superior court, because they
were not raised on direct appeal.

On May 6,2008, Holland, Berger, Jacobs affirmed , stating
Shaw did not raise issues on direct appeal so he could not
raise issues on post conviction relief.

On May 19,2008 SHaw filed for a rehearing EN BANC and was denied rehearing on JUne 2,2008 ansd sent letter to Superior court saying case cbosed..

On May 21,2008 Shaw stated workigg on his Habeus Corpus for the Federal courts, and this is his memorandum. Shaw states the facts in this case as follows.

      1. The state violated Shaw,s constitutional rights
           A) Illegal arrest
           B) denied Due Process
           C) Illeal search
           D) Witness confrontaion
           E) Equal protection
           F) Miranda Rights

      2. Err by trial court and appellette court
           A) Jury instructions
           B) allowing contaminated evidence
           C) Allowing D.U.I go to jury
           D) Allowing medical examiners report

      3. Ineffective Counsel
           A) Preliminary hearing
           B) Trial
           C) Appeal
           D) Motion to Suppress
           E) Not objecting to evidence
           F) Not meeting with the petitioner
           G) Not raising issues

      4. Err by ther Appellete court
           A) Not allowing Post conviction relief
             appeal to be heard.

When SHaw was arrested for driving under the influence, and there was no evidence that he was actually intoxicated, it became an illegal arrest. At trial the arresting officer testified that there were no tests given except the A.B.C. test and that SHaw transposed his letters, and thta SHaw had blood coming from an injury on his head that came from the accident when his car flipped over several times and then slid a couple of hundred feet. He then testified he did not give Shaw a breath alyzer, urine test or a blood test to see if Shaw was intoxicated.

Del statue 21§4177 states no person should drive a vehicle with a .08 alcohol concentration or more. DEl A (4)

Chemical test or test shall include any form or method of analysis of persons blood, breath alyzer urine sample for the purposes of determining alcohol concentration or the presence of drugs which is approved for the use by the forensics science laë. of the Medical Examiners of Delaware, state police crime lab, any state , federal law enforcement agency of any hospital ofmedical lab.      Del statue 21§4177 c(2)

In order to establish that Shaw was infact "under the influence of alcohol or drugs" at the time the state was required to demonstatte that

> 1) that he was the driver of the car.
> 2) he had a blood alcohol content, by eithere a breath alyzer, blood sample or urine sample.

Here there was no evidence of Shaw, blood alcohol content The state was required to show Shaw was under the influence( see state vs Durant) 188 a2d 526 (del 1963)

In this case there was no evidence SHaw was under alcohol or drugs, there is no evidence that Shaw was impaired because of alcohol or drugs.

There is however that Shaw , was in an accident, and

that he received a blow to the head, which could cause confusion
disorientation due to the blow to the head.

There were no evidence that shows Shaw had glassy eyes
or blood shot eyes , there were no open containers in the car tha
contain ed alochol .

The fact that courts along with the state did not give Shaw due process, as is stated as a gauranteed right in the United States Constitution, when the court allowoed evidence into trial that was inadmissable along with supporting testimony about the medical examiners repo rt, that the state admitted to inan interview.  According to Superior Court rule 16, If applicabl to the case the medical examiners report are due two weeks before final case review.  In the event that the state fails to comply with the order, any such reports and supporting testimony shall be inadmissable at trial.

The state dismissed several cases for failing to produce the medical examiners report as requested as stated in an interview with the News Journal , and as stated in chapter 47 o of title 16, a report signed by the forensic toxicoligist or forensic chemist who performed the t test or tests as to its nature is primafacie evidence that the material delivered was properly tested under procedures approved by the office of the chief medical examiners/forensic science labrotary, Del 10¢4330

For the purposes of establishing that physical evidence in a criminal or civil proceeding constitutes a particular controlled substance defined under chapter 47 title 16, the Medical Examiners Report must also be certified.

When the court failed to give the petitioner a suppression hearing , it again denied the due process rights that are guaranteed by the constitutiion.

Although tha appellant claims his innocence of knowing anything about there evidenc seized in the illegal search done on his automobile, although the police searched the car then released the car to the owner Shaw saying no drugs or money were found in the car, and the car was not impounded . The officers upon the car being ¢¢ towed researched the car and said that when they turned the car overon the wheels they saw an item fall on to the floor, the cops researched the car without the consent or without a search warrant, this is an illegal search and seizure ¢( search and seizure 180 U.S. vs Matlock 94 S. ct 988,993 (1974) ). which is in violation of his constitution rights under the 4th amendment , see carter vs state 321,2002 (super del jones 745 A.2d@872 to where the precludes thta the illegal search and seized evidence shall be conseidered " Fruit of the poisnous tree" and NewPort police charged appellant with posession but not constructive or actual possession dominion posession which should have been suppressed due to being obtained unde the 4th amendmant and must maintain to support the integrity of the trial, the whole trial was based on illegally obtained evidence.

A warrantless search less exigent circumstances violates the constitution of the United States and are perse unreasonable in teh absence of exigent circumstances unless authorized by warrant support by probable cause, Del c anon conn ar 281Z6  Scott vs state and hanna vs state 542 A2d 794 (1988) saienni vs state 346 A2d 152.

The tow slip shows the time , date and signature of Sgt RYan releasing car to owner.

Statue enacted to implament article of Delaware Constitution, con-
cerned with searches and seizures was intended to prohibit sear-
ches without consent or unless made pursuant to statue of the con-
stitution of the united states by persons proscribed from making
unreasonable searches, 11 Del c§2301 USCA const Amend 4 DEl C
ann const Art 1, state vs Phillips 366 A2.d 1203...
Del supr 1998

mere  observation of an item in plainview does not con-
stitute a fourth amendment search. usca const Amend 4 williamson
vs stae 707 A2.d 350.

Shaw was denied to have witnesses testify on his behalf
by the fault of the officers failure to take any names or address
phone numbers of the witnesses that saw the accident happen , which
were unknown to the petitioner until the officer testitied that the
re was witnesses, but he got a females information that pulled up
to the scene of the accident at the  same time that the officer
pulled up that witness could not have been able to testify to any
thing for she did not see anything happen, however the males that
saw the accident happen could have testiffied to what they saw if
the officer would have gotten their information. This would refute
what the officer argued that  Shaw was the driver of  the car.

Anything Shaw might have said can not be used agianst
him for the fact he was questioned at the scene and not read his
Miranda RIghts til 5:00am - 5:30 am Shaw is protected by the con-
stitution of the United States officers arrested Shaw at the scene
and then the officer questioned Shaw without reading his rights..

As to err by the trial court on jury instructions to whch
the presiding judge changed jury instructions after hearing the
state witnesess testify and telling the jurors that all must find
the defendant guilty or all must find the defendant innocent, lea-
vesa no room for an aquittal and the instructions is misleading..

Secondley the court erred when it allowed in the contam-
inated evidence that changed weight , the officer said that the
scale was broken and that is why the weight changedand then he also
testified that when he arrived at the station the evidence was out
in the open sitting on a table , and the officer said he had it in
the trunk of his car for several hours while he was riding around
back and fourth to the hospital and the police staion for several
hours. this brings into question the chain of custody..

Third is when the court allowed the driving under the
influence to go to the jury when there was no evidence that Shaw
was under the influence of alcohol or drugs, and tha he was infact
the driver of the vehicle.

Fourth the court erred by allowing the Medical Examiners
Report in when there own rule stipulated that it was to be inad-
missable along with any supporting testimony..

The Supreme Court erred by not allowing an appeal on Post
Conviction Relief saying he was barred from raising any issues
that was not raised on Direct Appeal, but in earlier cases they
ruled that if you raised the issues on Direct Appeal, you could
not raise the issues on Post Conviction Relief. But when Shaw tried
to do his Direct Appeal the court sent the letter to the Public
Defenders office and said all corespondenses are to come from the
attorney. Any person claiming that his conviction was tainted by
a violation of his constitutional rights may invoke the protection
of a Post Conviction relief at any time and therfore he has the c
constitutionally required Jones vs Anderson, 54 Del 587 183 A2d
177 (1962).....

The chain of custody comes into effect when Sgt Ryan ,
found said evidence and placed in the trunk of his car and rode
around for several hours with evidence in his car , He then said
around 4:30- 5:00 am he handed evidence to Cpl Sandusky, but San-
dusky testified that when he came into the headquasters he got
the evidence off the table where the evidence was sitting out in
the open, (see testimony transricpt, pg 60 first day testimony).
and then you have where the weight of the evidence changed weight
drastically which in turn should be considered "fruit of Posinous
tree"....

Effective counsel comes into effect on Sept, 30,2005
defendant went for preliminary hearing, state witnesses did not
show , Shaw then asked counsel to have the charges dismissed due
to the judge concerns about going out of the guidelines for hear-
ing, counsel said not was not the time to ask for dismissal.

ON october 4, 2005 Shaw went for the rescheduled hear-
ing and he asked counsel to have the case dismissed adn counsel
said Shaw should have asked before not now..

Shaw asked counsel for a Suppression hearing , counsel
failed to ask for hearing .

Notice for court hearingddates went out to the defnese
and to the prosecutionfindm JUdge Carpenter and in number 4 if
applicable to bhe case, medical examiners report are due two weeks
before final case review. In the event that the state fails to com-
ply with this order, any and all such reports and supporting test-
timony shall be inadmissable at trial, letters were sent to all
parfies, the final case review was Feb. 27, 2006 at that time
Shaw asked counsel to put in motion to have case dismissed due to
defende did not get the reports when they were suppose to get them
and all suporting testimony would be inadmissable at trial under
Rule 16 . Counsel would not , and state was given a continuence
for reports to get to defense, at that time Judges were then
changed . From October 4, 2005 when case was received in Superior
court till the time of trial not once did counsel meet with the
defendant, except at trial in court, even after Supreme court

ordered counsel to notify Shaw , counsel still failed to notify
SHaw....

        Although Shaw still claims his innocence of having any
knowledge of evidence, he feels that if counsel asked for any of
the motions, they would have been granted , and SHaw would not
have been going to trial, for the charges for they would have been
dismissed, which would have been a different outcome of the trial.
If counsel would have made arguements about discovery Rule on
medical examiners report, the judge would have been inadmiss-
able. This, Shaw feels this fits the prongs of Strickland vs Wash-
ington.. When attorney failed on appeal to raise any issues,
that Shaw felt should have been raised , or at least mentionb them
the attorney became ineffective as the Supreme Court said these
issues should have been raised on Direct Appeal, and can not
be raised now on POst conviction relief......

The fact that courts along with the state did not give Shaw due process as is stated as a guaranteed right in the United States Constitution, when the allowed evidence into trial that inadmissable along with supporting testimony about the Medical Examiners Report, that the state admitted to in an interview. According to Superior Court Rule 16, if applicable to to the case Medical Examiners report are due two weeks before final case review. In the event that the state fails to comply with the order any and such reports shall be inadmissable along with testimony.

The state dismissed several cases for failing to provide the report as requested as stated in an interview with the News Journal, and as stated in chapter 47 of title 16, a report signed by a forensic toxigoligist or forensic chemist who performed the tests or test as to its nature is premie facie evidence that the material delivered was properly tested under procedures approved by the office of the chief medical examiner/ Forensic science lab. DEL 10§4330......

For the purpose of establishing that physical evidence in acriminal or civil proceeding constitutes a particular control substance defined under chapter 47 title 16, the medical examiner report must also be certified.

When the courtfailed to give a suppression hearing for Shaw, it again denied the due process rights that are guarenteed by the constitution.

Although Shaw claims his innocence of knowing anything about the evidence seized in an illegal search done on his auto- mobile, although the police searched car, than released the car to Shaw saying no drugs or cash were found in the car or on him, car was not impounded , it was released to SHaw the owner.  The officer upon towing vehicle said they saw something fall from inside the car, all this happened after Shaw was taken to the hospital, but according to the tow slip and the ambulance report SHaw was still at the scene when the car was searched and nothing was found in the presence of him, the officer testified that they seasrched the car and found the drugs, before they towed the car, but according to the paper work there was no evidence found. An illegal search had to have been done while Shaw was at hospital in order for the officers testimony to be true, for at the scene the officer arrest SHaw , then once SHaw was released form the hospital, Shaw wasthen placed in handcuffs and taken to the station, he was not arested for anything else. this is an illegal search and seizure. see search and seizure 180 U.S. vs Matlock 94 s. ct 988,993 (1974).

which is in violation of his constituional rights under the 4th amendment, see carter vs state 321, 2002 (supr Del Jones 745 A2d@ 872, to where the precludes that the illegal search and seized evi- dence shall be considered "fruit of the Posinous Tree" and New POrt  police charged appellant with posession and not constructed or dominion posession which should have been suppressed due to being illegally obtained under the 4th Amendment and must maitain to support thethe integrity of the trial, the while the whole trial was based on illegallyobtained evidence.

In conclusion , the state violated the FOurth amend-
ment, the Fifth amendment, the Sixth amendment, the Fourteenth
amendment of Shaw by not given witness confrontation, due process
illegal search, fair trial , equal rights protection,

The courts also violated the Fourth , Sixth, Fourtennth
amendments by equal protection , due process, and allowing in
evidence obtained through an illegal search, and then when the
court allowed inadmissable evidence and testimony at trial.

WHERFORE SHaw the petitioner prays this court will
reverse and vacate all sentences.

The Superior Court denied the equal protection rights that are gauanteed by the United States Constitution , when it denied Shaw the petitioner for his Postconviction relief and at trial, when the court allowed in the evidence that was obtained in an illegal search wehn the cops searched the car once, then after releaseing the car to the owner Shaw, then researching the car after Shaw was taking to the hospital, and at that time they said they found drugs in the car, and when the court did sanction the state when they failed to supply the medical examiners report in the time frame as supplied for discovery material, and it sanctioned the state in other cases as mentioned by the attorney generals office, in the News JOornal, to which the state dismissed other cases because of the sanctions , the petitioner feels the state should have been given.  According to the Superior Court Rule 16 D, Failure to comply with the request if at any time during the course of the proceedings it brought to the attention of the court that . a party failed to comply with this rule, the court may order such party to permit the discovery or inspection , grant a continuence or prohibit the party form introducing evidence not disclosed. However in several cases in the Superior Court the state failed to present Medical examiners report before the time staed by court, which is typically all evidence must be shared with the defense attorneys, the Friday before the last case review; whichis often the last hearing before trial. However the Medical ex-aminers report must be signed, dated and certified under chap-ter 47 of title 16 by the forensic toxicoligist, or forensic chemist who performed the test, or tests as to its nature is

prima facie evidence. Where prosecutors failed to ascertain contents of detectives notes prior to detectives testimony and upon learning their contents decided to introduce into evidence statements by one of the defendants that were in the notes but had not been summarized in the police report given to the defendant, prosecution violated his continuency discovery duties to the defense, prejudiced defendants substantial rights and committed reversiable error. Skinner vs. state 575 A2d 1109 (Del) 1990. For failing to produce a medical examiners report indiscovery as ordered, the trial court exercised its inherent powers and precluded the state from introducing at trial any evidence and or opinions from the medical examiners regarding the weight or chemical compisition of the substances seized form the defendant state vs. Wright 821 A2d 330 (Del Super Ct 2003 ). See News JOurnal Article dated Aug 19,2007. When the Superior

When the Superior Court allowed more time to get the Medical Examiners Report to the defendant, it denied him his 14th amendment of Due Process and Equal Protection , for the court would not allow the same kind of evidence to be introduced in several other cases as stated in by theAttorney General Office.

When the trial court allowed evidence in at trial that obtained through an illegal search it denied the petitioner his fourteenth amendment right under the constituion. Once the car was released to the owner , the police would have to have the consent of the owner to research the car or have a valid search warrant, as staed in U.S. vs Matlock 94 S. ct 988, 993 (1974) and Schenechloth vs Bustamonte 93 S. ct 2041 2044-45 (1973) on the consent to search which the police did not have.

When the trial courtallowed the D.U.I charge to go to the jury , it did so in error , for there was insuffient evidence there was no breath alyzer or blood test given, the petitioner was invovled in a car accident , and had hit his head to where blood was coming from his head. The only test given was the A.B.C test where the petitioner transposed some letters due to the head injury, the police testified that because the petitioners clothes were in disarray he was drunk.

The police found no drugs in the car or on the petit-
ioner according to the arresting officer Sgt RYan who signed the

tow slip. However later on that night the police changed their

story and said they found drugs in the car when they turned the

car over on its wheels. On the tow slip Sgt Ryan released the car

to the owner at 1:35 am on 9/20/05, at thattime there was no drugs

or cash in the car or on the petitioner, and the car was not im-

pounded, Sgt Ryan then rode around with the evidence in trunk of

car for several hours and did not take the evidence and secure it

in a locker at the station that is part of the processing of evi-

deence. In fact according to testimony , when Cpl Sandusky came

into the station and the evidence was on a table out in the open

and not in a secured area.

When the police first questioned Shaw at the scene of the accident

he was not read his Miranda Rights , therefore anything he might

have said is inadmissable in court, and cannot be used against

him at trial. His Miranda RIghts were not read to him until 5:30am

There were no recordings submitted at trial in fact only a little

of evidence was submitted at trial and that evidence should be

FRUIT OF THE POISNOUS TREE.

There were two male witnesses that saw the accident and

were not known to the petitioner until the state witnesses told

the defense that they were there and that they did not get their

names or othere information and they only got information from

someone that pulled up at the same time they pulled up at the sce
ne of the accident...

The states case is based on an illegal arrest of the petitioner on the night of the accident and then they researched the car after Shaw the owner of the vehicle was taken to the hospital and then and only  then ddo they claim that they found some evidence in the car which they saidthat they weren't sure if Shaw knew about the evidence or not, and that the onlytest they gave Shaw was the A,B,C test and that SHaw transposed his letters and that he had blood coming from his head and they did not give a breath alyzer or a urine or blood test, but his clothes were disarray and that most people when they are drunk have their clothes in a disaaray. other than that there was no evidence that was the driver of the car or that he was drunk and that he knew about the evidence they allegedly found in his car after he was taken to the hospital.

Shaw tried to have the issues raised on direct appeal through his attorney at the public defendars office and she raised the isse of insufficent evidence for the charge to go to the jury and the judge over ruled on objection form the attorney at trial.

Therefore in light of the violations of the petitioners constitutional rights all charges should be reversed.....

traffic laws

21§4177

(a) No person shall drive a vehicle

1) where the person is under the influence of alcohol or drugs.

2) where the person is under the influence of drugs.

3) where the person is under the influence of both.

4) where the persons alcohol concentration is .08 or more.

5) where the persons alcohol concentration is within 4 hours after the time of driving .08 or more not withstanding any other pro-visions of the law to the contray a person is guilty under the subsect....

(c2)    Chemical test or tests shall include any form of method of analysis of persons blood , breath, or urine for the purposes of determination alcohol concentration or the presence of drugs which is approved for the use by the Forensic Science Lab of the Medical Examiners of Del, states police crime lab , any state or federal law enforcement agency or any hospital or medical lab....

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RAYVON CARTER, | § | No. 321, 2002 |
| | § | |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court of |
| | § | the State of Delaware in and for |
| v. | § | New Castle County |
| | § | |
| STATE OF DELAWARE, | § | Cr.A. Nos. IN01-08-0674 |
| | § | IN01-08-0675 |
| Defendant Below, | § | |
| Appellee. | § | |

Submitted: November 13, 2002
Decided:    December 26, 2002

Before **VEASEY**, Chief Justice, **WALSH** and **HOLLAND,** Justices.

Upon appeal from the Superior Court. **REVERSED AND REMANDED**.

Ralph David Wilkinson, IV, Esquire, Office of the Public Defender, Wilmington, Delaware, for Appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, Delaware, for Appellee.

**PER CURIAM:**

25

In this appeal from the Superior Court, the issue is whether the police had probable cause to arrest the defendant for loitering under 11 *Del. C.* § 1321(1). In finding that the officers lacked the requisite probable cause, we reverse the judgments of the Superior Court. We hold that the Superior Court erred in denying defendant's motion to suppress the evidence seized during the illegal arrest. Additionally, the tainted evidence is not admissible as a search incident to the resisting arrest charge as previously held by this Court in *Jones v. State*.[1]

## *Facts*

On July 27, 2001, two police officers observed the appellant-defendant below, Rayvon Carter, standing in the area of the 100 block of Franklin Street in Wilmington at 2:30 a.m. The officers witnessed several individuals approach Carter for short periods of time. They did not, however, observe any hand-to-hand transactions. After approximately fifteen minutes, the officers ordered Carter to move on.

Two hours later, around 4:30 a.m., the same officers encountered Carter at the 300 block of Broom Street. The distance between this location and Carter's original location is not insignificant.[2] The officers watched Carter for only a few minutes before advancing to arrest him for loitering. On approaching Carter, the officers

---

[1]745 A.2d 856 (Del. 1999).

[2]Although the actual distance between the two locations is approximately five blocks, one of the officers testified it was ten or twelve blocks. The error, however, does not affect our analysis.

2

noticed that he had his left hand in his back pocket and that Carter began to back away. The officers ordered Carter to remove his hand, but he refused. In apprehending Carter and forcing him to the ground, a red and white "Altoids" tin fell from his hand, but did not open. The resisting arrest charge stemmed from this brief struggle. After Carter was taken into custody, the Altoids can was opened and discovered to contain heroin.

Carter was charged with Loitering,[3] Possession with Intent to Deliver Heroin,[4] Possession of a Controlled Substance within 300 Feet of a Park, Recreation Area, Church or Place of Worship,[5] and Resisting Arrest.[6] At the suppression hearing Carter moved to suppress the seized evidence, arguing the officers lacked probable cause to arrest him for loitering. The State argued, however, that probable cause existed because Carter was initially told to move on from the first location and did not comply with that command by standing at the second location two hours later. The Superior Court denied Carter's motion, finding that the officers had probable cause to arrest him for loitering and that the search was therefore incident to a lawful arrest.

---

[3] 11 *Del. C.* § 1321(1).

[4] 16 *Del C.* § 1451.

[5] 16 *Del. C.* § 4768.

[6] 11 *Del. C.* § 1257.

3

The jury convicted Carter of Possession of Heroin, Resisting Arrest, and Possession of a Controlled Substance within 300 Feet of a Park, Recreation Area, Church or Place of Worship. He was acquitted of Loitering. He was sentenced to three years at Level V, one year of which is suspended for Level III. (He was an habitual offender.) Carter now appeals all of the charges except the resisting arrest charge.

## *Discussion*

Carter first argues that the trial judge erred in admitting the seized evidence because the officers lacked probable cause to arrest him for loitering. He also claims that the illegal arrest precludes admission of any evidence thereby obtained. Furthermore, Carter contends that the arrest for loitering was merely a pretext to search him for illegal contraband. We review for abuse of discretion a trial judge's decision to admit evidence.[7]

A person is guilty of loitering when the person "fails or refuses to move on when lawfully ordered to do so by any police officer."[8] An individual may be arrested for loitering only if the arrest is supported by probable cause.[9] For an arresting officer to have probable cause, the officer's knowledge must be sufficient for a prudent

---

[7]*Williamson, v. State,* 707 A.2d 350, 354 (Del. 1998).

[8]11 *Del. C.* § 1321(1).

[9]*Woody v. State,* 765 A.2d 1257, 1262 (Del. 2001) (citing *Florida v. Royer,* 460 U.S. 491, 498 (1983)).

4

person to believe that an individual had committed or was committing an offense.[10] "Courts must review probable cause determinations in light of 'the factual and practical consideration of everyday life on which reasonable and prudent [persons], not legal technicians, act.'"[11] Delaware statutory law provides that police officers may seize evidence pursuant to a lawful arrest.[12] Thus, for the officers to have probable cause to arrest a person for loitering under subsection (1), the person must have refused to move on after being ordered to do so.

Here, Carter was initially told to move on when the officers first encountered him on the 100 block of Franklin Street, and he complied by leaving the immediate area. Accordingly, he did not violate the statute by refusing to move on when the same officers noticed him two hours later and at some distance from the original encounter. Therefore, the officers did not have probable cause to arrest Carter for committing the crime of loitering on Broom Street. The temporal and spatial gap between these two locations was enough to satisfy the initial command. The officers, therefore, could only require Carter to move on again. Although the police should not have to order a person to move on repeatedly in a limited area to comply with Section

---

[10]*Darling v. State*, 768 A.2d 463 (Del. 2001).

[11]*Id.* (quoting *Gardner v. State*, 567 A.2d 404, 409 (Del. 1989)).

[12]11 *Del C.* § 2303(1).

5

1321(1), a person should also not be subjected to an unlimited and subjective command in order to refrain from being arrested. The arrest of Carter was illegal.

In this appeal, the State argues that the evidence is admissible because Carter resisted arrest and therefore they had a right to search him.[13]  We disagree and find *Jones v. State*[14] controlling.

In *Jones*, the police received an anonymous 911 call that there was a suspicious looking man wearing a blue coat in a neighborhood known for high drug activity. Accordingly, police officers stopped Jones because he was wearing a blue coat in the vicinity described by the 911 caller. On approaching Jones, the officers ordered him to stop and remove his hands from his coat pockets. When Jones refused, one of the officers grabbed Jones' hands in an attempt to remove them from the coat pockets. At this point, Jones threw an object over the officers' head that was later determined to be cocaine.

On appeal, the State argued that although the underlying arrest for cocaine was illegal because the officers lacked reasonable suspicion to stop Jones, he resisted arrest and the police therefore had a right to search him. We disagreed and held that "the

---

[13]*See* 11 *Del. C.* § 2303(1).

[14]745 A.2d 856 (Del. 1999).

6

crime of resisting an illegal arrest does not necessarily carry with it the right to justify

any search incident to an actual arrest for the crime of resisting an illegal arrest."[15]

As in *Jones*, we here find that Carter's resisting arrest does not render the

illegally seized evidence admissible.

> The purpose behind the rule that resisting even an illegal arrest
> constitutes a crime is to foster the effective administration of justice, to
> deter resistance to arrest and to provide for the safety both of peace
> officers and the citizens of Delaware. . . . [T]his purpose cannot be used
> to allow an officer . . . to contend that evidence seized incident to that
> illegal arrest is admissible."[16]

The State cannot profit from evidence collected after an illegal search.

Accordingly, we hold that the trial court erred by failing to grant Carter's motion to

suppress. To find otherwise would result in the circumvention of the policy behind

the exclusion rule, to wit: "to deter future unlawful police conduct."[17]

### Conclusion

The officers did not have probable cause to arrest Carter for loitering. As a

result, the fruits of the illegal search must be suppressed. The judgments of the

Superior Court are reversed and this matter is remanded for further proceedings in

accordance with this opinion.

---

[15] *Jones*, 745 A.2d at 872.

[16] *Id.* at 873.

[17] *United States v. Calandra*, 414 U.S. 338, 347 (1974).

7

3|

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE          )
                          )
       V.                 )    ID NO.   0509015887
                          )
DANIEL D SHAW,            )
       DEFENDANT.         )

SCHEDULING ORDER

It is hereby ORDERED this 17TH DAY OF MAY, 2006, that:

1)  The following Court dates are established:
    (A)  First Case Review on  .
    (B)  Final Case Review on  . **3/27/06**
    (C)  Trial on 06/27/2006.
         Counsel and Defendant must attend the calendar call
         on the day of the trial at 9:00 a.m.

2)  Counsel should immediately notify their witnesses and the
    Defendant of these dates.  If there are issues regarding the
    unavailablility of witnesses or any other scheduling problems,
    counsel is to notify the Court (Attn: Elizabeth Brenhoch)
    within two weeks after the first case review of these concerns.
    If this occurs, the case will be rescheduled by the
    Prothonotary's Office.  Otherwise the date will remain as
    previously scheduled absent exceptional circumstances.

3)  Motions relating to discovery or to suppress must be filed
    within twenty (20) days of the first case review.

4)  If applicable to the case, Medical Examiner's reports are due
    two weeks before Final Case Review.  In the event that the
    State fails to comply with this Order,any such reports and
    supporting testimony shall be inadmissible at trial.

                    William C. Carpenter, Jr.
                    Criminal Administrative Judge
                    on behalf of the Court

cc:SHAWN E MARTYNIAK, Deputy Attorney General
   ROBERT M GOFF  , Defense Counsel

18

DEFENDANT'S
EXHIBIT

050907

## DSP Troop 6
### Tow Slip

| Date Towed | Time Towed | Complaint Number | |
|---|---|---|---|
| 09/20/2005 | 01:35 | | |

### VEHICLE INFORMATION

| Registration | | State | | VIN Number | | |
|---|---|---|---|---|---|---|
| XB275696 | | DE | | 1P3EJ46X5XN612769 | | |
| Year | Make | | Model | | Color | |
| 1999 | Plymouth - PLYM | | BREEZE | | DARK | |
| Lein? | | NCIC | | CJIS | | |
| Unknown | | Unknown | | Negative | | |
| Inventory | | Other | | | | |

| Damage | |
|---|---|
| Total | |
| Comments | |
| "N/A" | |

### DRIVER INFORMATION

| Last Name | First Name | Middle Name | Suffix |
|---|---|---|---|
| SHAW | DANIEL | D | "N/A" |
| Address | | | |
| 21 BALFOUR AVE | | | |
| City | State | Zip Code | |
| CLAYMONT | DE | 19703-0000 | |
| Driver/Owner Notified? | Notified By | Date | |
| Yes | SGT RYAN NEWPORT | 09/20/2005 | |
| If not, why not? | | | |
| "N/A" | | | |

### OWNER INFORMATION

| Last Name | First Name | Middle Name | Suffix |
|---|---|---|---|
| SHAW | DANIEL | D | |
| Address | | | |
| 21 BALFOUR AVE | | | |
| City | State | Zip Code | |
| CLAYMONT | DE | 19703-0000 | |

### IMPOUND / CRIMINAL SEIZURE

| Impounded? | Reason | | |
|---|---|---|---|
| No | "N/A" | | |
| Other Reason | | | |
| "N/A" | | | |
| Criminal Seizure? | Vehicle Seized | Authorizing Supervisor | |
| No | "N/A" | "N/A" | |
| Cash Seized | Cash Description | | |
| "N/A" | "N/A" | | |
| Drugs Seized | Drugs Description | | |
| "N/A" | "N/A" | | |
| Other Seized | Other Description | | |
| "N/A" | "N/A" | | |

### REQUEST/RELEASE INFORMATION

| Tow Requested By | Name | Police Agency |
|---|---|---|
| Police Agency | SGT RYAN | DSP TROOP 6 |
| Release Date | Released To | Released By |
| 09/20/2005 | OWNER | SGT RYAN NEWPORT PD |
| Special Release Instructions | | |
| "N/A" | | |

### TOW COMPANY INFO

| Towed From | Tow Company Driver | | Phone Number |
|---|---|---|---|
| S/B DE 141 OVERTOP NEWPORT | | | (302) 328-3146 |
| Tow Company | If Other, Specify | Address | City | State | Zip |
| B and F | "N/A" | 119 Old Airport Rd. | New Castle | DE | 19720 |
| Comments | | | | | |
| "N/A" | | | | | |

DSP Troop 6
3301 Kirkwood Hwy

Wilmington    DE    198080000
(302) 633-5000

17

05/30/2006 17:38 FAX 302 577 5864
Case 1:08-cv-00494-GMS    Document 3    Filed 08/07/2008    Page 31 of 33
Lab Report for SHAW, Daniel Lab No CS-054300 Police No 3705001646    Page 1 of 1
☑002



**DELAWARE HEALTH
AND SOCIAL SERVICES**

OFFICE OF CHIEF MEDICAL EXAMINER
FORENSIC SCIENCES LABORATORY

Richard T. Callery, M.D., F.C.A.P.
Chief Medical Examiner
Director, Forensic Sciences Laboratory

Page 1 of 1

# Controlled Substances Laboratory Report

**Laboratory Case No.:** CS 054300
**Case Name(s):** SHAW, Daniel
**Agency:** Newport
**County:** New Castle
**Evidence Materials Examined:**

**Police Complaint No:** 3705001646
**Alias:**
**Received from:** Sandusky
**Track:**

One envelope, sealed, initialed, and dated.
**Evidence Description:**

A) Thirty-three small zip-lock bags each containing white chunky substance with a total net weight
of 4.83 gm.
B) Four zip-lock bags, each containing white powder with a total net weight of 4.82 gm.
C) One plastic bag containing white powder weighing 24.90 gm.

**Materials Analyzed:**

**Drugs Detected:**

| A) White chunky substance | Cocaine base(crack) |
| B&C) White powder | Cocaine |

_____    _____
Irshad Bajwa Forensic Chemist    Date

AUG. 19, 2007
Sunday, News Journal
WILMINGTON, DEL.
Updates and latest news:
www.delawareonline.com

# Local

News tips: 324-2882 or newsdesk@delawareonline.com

## Drug cases dropped amid testing spat

### Prosecutors, medical examiner's office criticize each others' work

By ESTEBAN PARRA
The News Journal

WILMINGTON — Citing budgetary constraints on the part of the Medical Examiner's Office, the state Attorney General's Office has acknowledged it has been forced to drop a number of charges against suspected drug dealers because testing on the evidence was not turned around in enough time before trial.

The Medical Examiner's Office fired back, saying the Attorney General's Office needs a minimum of 15 working days to complete a typical se—and it

"We resent the implications of the remarks made by the A.G.'s office regarding our ability to return drug test results," said Jay Lynch, spokesman for the Department of Health and Social Services, which oversees the medical examiner. "If anything, our office has gone above and beyond in support efforts — many times often without sufficient notice to be able to meet the trial dates."

Newport police chief Michael Capriglione, who heads the Delaware Police Chiefs Council, said it was upsetting to learn suspected drug deal-

has informed the courts about this.

"Even so, we often receive requests for cases to be done sooner and we still get quite a few surprise subpoenas for trials without previous notification," Lynch said. "This happens in all three counties and since there is no one person who oversees all subpoenas, it is a continuing problem that our office has been actively partnering with the A.G. to resolve."

Newport police chief Michael Capriglione, who heads the Delaware Police Chiefs Council, said it was up-

> "We just all need to get on the same page and get this glitch fixed."
>
> **Michael Capriglione,**
> **Newport police chief, who heads the**
> **Delaware Police Chiefs Council**

ers were being let go because because of this issue. He said the real losers here are the people who live in the places where drug activity takes place.

"We don't live on the street corners where these drug dealings and drug ac-

tivities are being done," Capriglione said. "How about the people that have to put up with it in these areas where we are arresting these people?"

On Saturday, Capriglione said he was almost run down by a drug suspect who attempted to flee a DUI checkpoint Friday night.

Isiah Stevens, 19, of the 500 block of E. Ninth St. in Wilmington, was later arrested on charges including reckless endangerment in the first degree possession of cocaine with the intent to deliver and drug trafficking. He was taken to Young Correctional Institution and is being held in lieu of a $17,600 secured bail.

See DRUGS — B5

See DRUGS — B5



'IRON CHEF' COMES
TO THE CLASSROOM
Kids at the University of Delaware
Early Learning Center handle
some surprise ingredients. B2

ONLINE POLL
www.delawareonline.com
Q. Do fanatic sports fans
go too far?

YESTERDAY'S QUESTION
Q. Have you ever ridden on Amtrak's Acela
train?
Yes 14.3%  No: 85.7%
UNSCIENTIFIC POLL. TOTAL VOTES: 14

# Drugs: A.G.'s office largely mum

**FROM PAGE B1**

"We hope to God that these charges stick," he said. "We just all need to get on the same page and get this glitch fixed."

Beyond blaming the Medical Examiner's Office, Attorney General Beau Biden's office had little to say about the issue.

The News Journal asked Biden spokesman Jason Miller a series of questions, including the depth and scope of the case dismissals, to which Miller responded with one answer:

"While we recognize the budgetary constraints that the Medical Examiner's Office faces, the Department of Justice has been unable to prosecute certain drug cases because the Medical Examiner's Office has been unable to complete required drug testing within the time-frame prescribed by the court."

The Medical Examiner's Office is charged with testing suspected drugs confiscated by police so it can be used as evidence by prosecutors. The results are then shared with defense attorneys so that they can see what drug it is and if they want to test it further.

Typically all evidence, including test results, must be shared with defense attorneys the Friday before a defendant's final case review, which often

## QUESTIONS FOR THE A.G.

The News Journal asked the state Attorney General's Office seven questions concerning this issue.

- **What kind of drug crimes has the Delaware Department of Justice been unable to prosecute?**
- **How many cases has the Delaware Department of Justice been unable to prosecute?**
- **How long has the office been aware of this issue?**
- **Has the Delaware Department of Justice gone to other agencies or private companies for drug testing to circumvent the Medical Examiner's Office?**
- **Has this affected all drug cases or just a portion of them?**
- **What concerns does the Delaware Department of Justice have if these delays continue?**
- **Have there been major cases that have been compromised?**

The agency's spokesman responded to each question with the same answer:

"While we recognize the budgetary constraints that the Medical Examiner's Office faces, the Department of Justice has been unable to prosecute certain drug cases because the Medical Examiner's Office has been unable to complete required drug testing within the time-frame prescribed by the court."

is the last hearing before a person goes to trial. While Delaware does not have a speedy-trial law, court guidelines call for most cases to be brought to trial within 120 days and all cases to be disposed of within one year.

On a monthly basis, Lynch said a chemist in the Controlled Substances Laboratory processes and completes roughly 100 cases per month – more than 1,000 cases a year. In addition, at any given time, a chemist will have up to 200 newly assigned cases.

One of the Medical Examiner's four chemist positions is currently vacant, Lynch said. But they are working to fill the position.

Contact Esteban Parra at 324-2299 or eparra@delawareonline.com.