IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DANIEL SHAW, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 08-494-GMS |
| ) | |
| PERRY PHELPS, Warden, and ) | |
| ATTORNEY GENERAL OF ) | |
| THE STATE OF DELAWARE, ) | |
| ) | |
| Respondents. ) | |

Daniel Shaw. *Pro se* petitioner.

James T. Wakley, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

## MEMORANDUM OPINION

Sept 23, 2011
Wilmington, Delaware

Sleet, Chief Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Daniel Shaw ("Shaw"). (D.I. 2) For the reasons discussed, the court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At approximately 1:30 a.m. on September 20, 2005, Sergeant James Ryan of the Newport Police Department witnessed a vehicle speeding southbound on Route 141. He observed the vehicle crash into the barriers, go up an incline and around a curve, and heard a loud thump. After driving south on Rt. 141 for approximately two minutes, Ryan found a Plymouth Breeze upside down. Ryan saw Shaw crawl out from underneath the vehicle, and he did not see anyone else near the overturned vehicle. *Shaw v. State*, 922 A.2d 415 (Table), 2007 WL 866196, at *1 (Del. Mar. 23, 2007).

Ryan testified that Shaw was visibly injured; he had lacerations on his legs, a head injury, and he was also complaining about his side hurting. Ryan detected the smell of alcohol on Shaw's breath once he got closer to Shaw. When asked if he had been drinking, Shaw admitted that he had been, but did not say exactly how much he had to drink. Ryan then asked Shaw to say the alphabet. According to Ryan, Shaw made it to B, and then he started transposing letters. *Id.*

Ryan called a tow truck to turn Shaw's vehicle back over. As the car was being turned over, a bag containing a white substance fell in front of the driver's seat. The substance was crack cocaine. Several other bags were then found Shaw's vehicle. A total of 34.05 grams of cocaine were seized. *Id.*

1

At the police station, Shaw admitted that he had a drink that night, but did not believe that he was intoxicated. Shaw also admitted to smoking marijuana two days earlier, and taking several prescription drugs due to recent injuries. Shaw denied being the driver of the vehicle. *Id.*

In November 2005, Shaw was indicted on several charges, including driving under the influence of alcohol and/or drugs; trafficking in cocaine over 100 grams; maintaining a vehicle for keeping controlled substances; possession of drug paraphernalia; possession with intent to deliver; and reckless driving. (D.I. 12) A Superior court jury convicted Shaw on all counts. The Superior Court sentenced him to two years of incarceration on the trafficking charge, three months of incarceration for the maintaining a vehicle charge, one month of incarceration for the drug paraphernalia charge; three years of incarceration for the possession with intent to deliver cocaine charge followed by probation, and fines on the remaining driving under the influence and the reckless driving charges. *Id.* The Delaware Supreme Court affirmed his convictions and sentences. *Shaw,* 2007 WL 866196, at *2.

In June 2007, Shaw filed a motion for post-conviction relief pursuant to Superior Court Criminal Rule 61, which the Superior Court denied. *State v. Shaw,* 2007 WL 3105751 (Del. Super. Ct. Sept. 18, 2007). Shaw appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment. *Shaw v. State,* 2008 WL 1952089 (Del. Jun. 2, 2008).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* 538 U.S. 202, 206 (2003).

Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the

3

state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "Fair presentation of a claim means that the petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines*, 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted but procedurally defaulted. *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Werts*, 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger*, 266 F.3d at 224. A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review

#### 1. Deferential standard of § 2254(d)

When a state court has adjudicated a petitioner's habeas claim on the merits, a federal district court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim

5

on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

### 2. *De novo* standard of review

If the state's highest court has not adjudicated a federal habeas claim on the merits, but the claim is exhausted and the merits are properly before the federal court on habeas review, then the federal court must review the claim *de novo*. *See Breakiron v. Horn*, 642 F.3d 126, 131 (3d Cir. 2011)(citing *Porter v. McCollum*, __ U.S. __, 130 S.Ct. 447 (Jan. 19, 2011)). *De novo* review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams*, 529 U.S. at 400 (2000)(O'Connor, J., concurring).

### 3. Section 2254(e) and the presumption of correctness

Finally, whether reviewing a habeas application *de novo* or under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This presumption of correctness applies to both implicit and explicit findings of fact, and can only be rebutted by the petitioner upon a showing of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341(2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## III. DISCUSSION

Shaw's petition asserts twelve grounds for relief: (1) the Delaware Superior and Supreme Courts erred by denying his Rule 61 motion under Rule 61(i)(3); (2) an illegal search of the

vehicle led to the discovery of the drugs; (3) he was illegally arrested for driving under the influence, which, in turn, formed the basis of his illegal conviction; (4) defense counsel provided ineffective assistance by failing to file motions or raise certain issues on appeal;[1] (5) he was denied the right to call a witness; (6) the trial court erred by allowing the "driving under the influence" charge to go to the jury and for giving improper jury instructions; (7) he was denied a fair hearing when the trial judge improperly admitted hearsay and contaminated evidence at trial; (8) the trial testimony regarding the weight of the cocaine seized differed from the original weight reported; (9) testimony provided at trial conflicted with the written police report; (10) the Delaware Supreme Court erred by denying his Rule 61 motion under Rule 61(i)(3); (11) the police illegally searched the vehicle in violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and his rights to due process and equal protection, and he was deprived of his right to equal protection during his case review and trial; and (12) there was a break in the chain of custody of the cocaine seized.

### A. Claims One and Ten

Shaw's first and tenth claims both allege that the Delaware state courts erred by denying his Rule 61 motion and, specifically, that the Delaware Supreme Court erred for holding that Shaw's claims were procedurally barred under Delaware Superior Court Criminal Rule 61(i)(3). These arguments, however, are not cognizable on federal habeas review, because they merely criticize the Delaware state courts' analysis in a state collateral proceeding. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998)(holding that the "federal role in reviewing an

---

[1] For ease of analysis, the court has re-numbered Shaw's ineffective assistance of counsel argument from claim number nine to claim number four, and the original claim number four is now claim number nine. The substance of the claims has not been altered.

7

application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's **collateral** proceeding does not enter into the habeas proceeding.")(emphasis in original); *see also Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004)("alleged errors in [state] collateral proceedings . . . are not a proper basis for habeas relief"). Accordingly, the court will deny claims one and ten for failing to assert a proper basis for federal habeas relief.

### B. Claim Two

In claim two, Shaw contends that the warrantless police search of the vehicle and subsequent seizure of the drugs found therein violated his Fourth Amendment rights. However, pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), claim two fails to provide a basis for federal habeas relief. In *Stone*, the United States Supreme Court held that a federal court cannot review a Fourth Amendment claim unless the petitioner was denied a full and fair opportunity to litigate it in the state courts. *Id.; Wright v. West*, 505 U.S. 277, 293 (1992)("We have also held . . . that claims under *Mapp* [alleging evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct review."). As a general rule, a petitioner has had a full and fair opportunity to litigate a Fourth Amendment claim if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980); *U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Petillo v. New Jersey*, 562 F.2d 903, 906-07 (3d Cir. 1977). A petitioner has also had a "full and fair" opportunity to litigate his Fourth Amendment claim whether or not the state courts properly or

summarily resolved the claim. *See, e.g., Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002)(holding that "[a]n erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar."); *Gilmore v. Marks*, 799 F.2d 51, 56 (3d Cir. 1986), *cert. denied*, 479 U.S. 1041 (1987). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state from fully and fairly hearing his Fourth Amendment arguments. *Marshall*, 307 F.3d at 82.

Here, Shaw contends that he was denied a full and fair opportunity to litigate his Fourth Amendment claim because defense counsel refused Shaw's request to file a motion to suppress the evidence seized from the vehicle. This argument is unavailing. Contrary to Shaw's belief, the issue is not whether defense counsel refused to do something he requested but, rather, whether Delaware's criminal system provides a method for suppressing evidence. Rule 41 of the Delaware Superior Court Rules of Criminal Procedure authorizes a defendant to file a pre-trial motion to suppress evidence, thereby providing a mechanism for presenting Fourth Amendment issues in the Delaware state courts. Moreover, Shaw raised the illegal search issue on post-conviction appeal, both on its merits and under the guise of an ineffective assistance of counsel claim, and the Delaware Supreme Court denied it. Thus, because Shaw had both pre and post trial opportunities for review of his Fourth Amendment suppression issue, the court concludes that Shaw had a "full and fair" opportunity to litigate his Fourth Amendment claim. Accordingly, the court will deny claim two as barred by *Stone*.

### C. Claim Three

In claim three, Shaw alleges that the police lacked probable cause to arrest him for

9

driving under the influence because there was no evidence that he was actually intoxicated. Shaw points to the absence of a breathalyzer test, blood test, or urine test demonstrating his blood alcohol level; the absence of testimony that his eyes were glassy or bloodshot; and the absence of any open alcohol containers in the car. To the extent this claim alleges a Fourth Amendment violation, the court will deny it for the same reasons discussed with respect to claim two.

However, to the extent Shaw alleges there was insufficient evidence to support his conviction for driving under the influence of alcohol or drugs, he has asserted an issue cognizable on habeas review. Shaw raised this issue on direct appeal, and the Delaware Supreme Court denied it as meritless. Therefore, the court must review the argument under the deferential standard of § 2254(d).

The clearly established Federal law governing Shaw's insufficient evidence claim is *Jackson v. Virginia*, 443 U.S. 307 (1979). Pursuant to *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Additionally, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. However, it is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Id.*

In this case, the Delaware Supreme Court applied a sufficiency of the evidence standard that is indistinguishable from the *Jackson* standard. Therefore, the Delaware Supreme Court's

10

decision is not contrary to clearly established Federal law.

The court also concludes that the Delaware Supreme Court's decision did not involve an unreasonable application of *Jackson*. In order to sustain a conviction for driving under the influence of drugs and/or alcohol, the State had to prove two elements beyond a reasonable doubt: "[f]irst, that the defendant drove a motor vehicle at or about the time and place charged; [and] [s]econd, that the defendant was under the influence of alcohol [or drugs] when he drove the motor vehicle." *Bennefield v. State*, 2006 WL 258306, at *3 (Del. Super. Ct. Jan. 4, 2006); Del. Code Ann. tit. 21, § 4177(a)(1), (2), (3). In Delaware, a person is under the influence of alcohol or drugs when, "because of alcohol or drugs or a combination of both, [the person] is less able than [he] would ordinarily have been, either mentally or physically, to exercise clear judgment, sufficient physical control, or due care in the driving of a vehicle." Del. Code Ann. tit. 21, § 4177(c)(5). "What is required is that the person's ability to drive safely was impaired by alcohol [or drugs];" chemical testing showing such impairment need not be proven. *Bennefield*, 2006 WL 258306, at *3.

The evidence adduced at trial in this case established the following. The vehicle involved in the accident was registered to Shaw. Sergeant Ryan witnessed Shaw crawl out from the vehicle within minutes of the accident, and he did any see any other passengers in or near Shaw's car. Sergeant Ryan detected an odor of alcohol when he spoke to Shaw, and Shaw told Ryan that he had been drinking before he drove. Shaw also failed the field sobriety test administered by Sergeant Ryan. Viewing this record as a whole in a light most favorable to the prosecution, the court concludes that a rational trier of fact could have found Shaw guilty of driving a vehicle while under the influence of alcohol. Given this determination, the court concludes that the

11

Delaware Supreme Court reasonably applied *Jackson* in denying Shaw's insufficiency of the evidence argument, and also that the Delaware Supreme Court's decision that was based on a reasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, the court will deny claim three.

### D. Claim Four

In claim four, Shaw contends that defense counsel provided ineffective assistance during the trial by failing to file a motion to suppress evidence and a motion to exclude an untimely medical examiner's report. He also contends that counsel provided ineffective assistance on direct appeal by failing to raise several issues. Shaw presented the first ineffective assistance of counsel allegation in his opening post-conviction appellate brief, and he presented the second allegation in his post-conviction appellate reply brief. Although the Delaware Supreme Court rejected the first argument as meritless, it did not consider Shaw's allegation regarding counsel's failure to raise certain issues on appeal. Therefore, the court will review Shaw's first argument under the deferential standard of § 2254(d) and the second argument *de novo*.

#### 1. Counsel's failure to file motions during trial

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but

for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Here, the Delaware Supreme Court's decision is not contrary to clearly established federal law because the state supreme court analyzed Shaw's first ineffective assistance of counsel allegation within the *Strickland* framework. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause"). The court's inquiry is not over, however, because it must also determine if Shaw has satisfied the "unreasonableness" prong of the § 2254(d)(1) test. A state court's decision regarding an ineffective assistance of counsel claim is owed "double deference" when reviewed under § 2254(d)(1), because

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). **When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."**

*Richter*, 131 S.Ct. at 788 (emphasis added)(internal citations omitted). When assessing the

13

reasonableness of counsel's performance under *Strickland*, there "is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Richter*, 131 S.Ct. at 790 (internal citation omitted). "*Strickland* [] calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 786. In other words,

> [a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.*

The Delaware Supreme Court rejected Shaw's contention that defense counsel's "failure" to file a motion to suppress evidence and a motion to exclude an untimely medical examiner's report constituted ineffective assistance because Shaw "offer[ed] only conclusory allegations that error on the part of his counsel affected the outcome of his trial." *Shaw*, 2008 WL 1952089, at *1. Notably, in this proceeding, Shaw merely asserts in a conclusory fashion that the outcome of his proceeding would have been different but for counsel's ineffective assistance, because motions identified above would have been granted if counsel had filed them. Significantly, however, Shaw fails to provide any further substantiation to establish either deficiency or prejudice. Therefore, the court concludes that Shaw has failed to demonstrate that the Delaware

14

Supreme Court's rejection of the instant claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter,* 131 S.Ct. at 786. The court also concludes that the Delaware Supreme Court's decision was based on a reasonable determination of the facts. Accordingly, the court will deny this portion of claim four for failing to satisfy § 2254(d).

### 2. Counsel's failure to raise issues on direct appeal

Shaw also asserts that defense counsel provided ineffective assistance by failing to raise on direct appeal the following issues that the Delaware State Courts subsequently determined were barred from post-conviction review: (1) his *Miranda* rights were violated; (2) his confrontation rights were violated; (3) he was denied the opportunity to challenge an illegal search; and (4) the trial testimony was conflicting.[2]

Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson,* 359 F.3d 646, 656 (3d Cir. 2004). An attorney's decision about which issues to raise on appeal are strategic,[3] and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes,* 463 U.S. 745 (1983); *Smith v. Robbins,* 528 U.S. 259, 272 (2000). In his § 2254 petition, Shaw simply states that counsel failed to raise on appeal the claims Shaw wanted her to raise. This conclusory allegation, however, does not establish ineffective assistance of

---

[2]The *Miranda* claim is similar to claim three of this proceeding. In turn, the confrontation claim parallels claim five of this case, the illegal search claim corresponds with claim two, and conflicting testimony claim appears to mirror claims eight and nine.

[3]*See Albrecht v. Horn,* 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn,* 166 F.3d 163, 174 (3d Cir. 1999)(counsel is afforded reasonable selectivity in deciding which claims to raise without the specter of being labeled ineffective).

counsel, because it fails to overcome the strong presumption that counsel's conduct fell within a range of reasonable professional assistance or demonstrate that a reasonable appellate strategy would have included presenting the claims identified by Shaw. Additionally, Shaw has failed to demonstrate a reasonable probability that the outcome of his appeal would have been different but for appellate counsel's failure to raise these claims. As a result, the court concludes that appellate counsel's actions did not rise to the level of constitutionally ineffective assistance under *Strickland*. Therefore, the court will deny Shaw's claim regarding appellate counsel's performance as meritless.

### E. Procedurally Barred Claims: Claims Five, Six,[4] Seven, Eight, Nine, Eleven & Twelve

Shaw raised claims five, six, eight, nine, and twelve, to the Delaware Supreme Court on post-conviction appeal, as well as a due process and equal protection argument contained in claim eleven. The Delaware Supreme Court held that the claims were procedurally barred under Delaware Superior Court Rule 61(i)(3) because Shaw failed to raise the issues on direct appeal. By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984), that its decision rested on state law grounds. Superior Court Criminal Rule 61 constitutes an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the

---

[4]Claim six asserts that the trial court erred in allowing the "driving under the influence" charge to go to the jury and for giving improper jury instructions. Shaw's contention about letting the "driving under the influence" charge go to the jury is essentially the same insufficient evidence argument he asserted in claim three. Because the court has already considered and rejected claim three's insufficient evidence argument, the court will treat claim six as alleging only the improper jury instruction argument.

court cannot review the merits of the aforementioned claims absent a showing of cause for the default and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

In turn, Shaw did not exhaust state remedies for claim seven and the remaining equal protection argument contained in claim eleven, because he did not present these claims to the Delaware Supreme Court on direct or post-conviction appeal. Any attempt to obtain review of the claims in the Delaware state courts at this juncture would be barred by Rule 61(i)(1) as time barred; by Rule 61(i)(3) as procedurally defaulted; and by Rule 61(i)(4) as repetitive. *See Bright v. Snyder*, 218 F. Supp. 2d 573, 580 (D. Del. 2002)(Rule 61(i)(3) bars further review of claims that were not presented on direct appeal); *White v. Carroll*, 416 F. Supp. 2d 270, 281 (D. Del. 2006)(Rule 61(i)(4) bars further review of claims that were previously adjudicated). Therefore, the court also cannot review the merits of claims seven and the remaining portion of claim eleven absent a showing of cause and prejudice, or a miscarriage of justice.

Shaw attempts to establish cause for his default of these issues by blaming counsel's failure to raise the claims on direct appeal. As previously explained, however, defense counsel's performance on direct appeal did not amount to constitutionally ineffective assistance. Therefore, counsel's performance cannot excuse Shaw's procedural default of claims five, six, seven, eight, nine, eleven, and twelve.

Shaw does not assert, and the court cannot discern, any other cause for his procedural default of the instant seven claims. In the absence of cause, the court will not address the issue of prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine is inapplicable, because Shaw has not provided any new reliable evidence of his actual innocence.

Accordingly, the court will deny claims five, six, seven, eight, nine, eleven, and twelve as procedurally barred.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In turn, if a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Shaw's petition fails to warrant federal habeas relief. The court is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Shaw's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.